UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VICTOR ANDINO SANTANA,<br><br>                Plaintiff,<br><br>        v.<br><br>FRANK BISIGNANO,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | CIVIL ACTION<br>NO. 25-12239-WGY |

YOUNG, D.J.                                     May 29, 2026

## MEMORANDUM OF DECISION

## I.   INTRODUCTION

Plaintiff Victor Andino Santana ("Santana") brings this action against Frank Bisignano, the Commissioner of Social Security.  Santana challenges the determination of the Appeals Council, which denied his request for review after Administrative Law Judge John Benson ("the hearing officer") determined that Santana was not disabled, and thus not entitled to disability benefits. See Compl., ECF No. 1; Not. Mot., ECF No. 13.  The Commissioner opposed and moved to affirm the Commissioner's decision. See Defs. Mot. Affirm Comm'r's. Decision, ECF No. 17.  The Court **GRANTS** Santana's motion to reverse the Commissioner's decision, as the Hearing Officer erroneously failed to consider Santana's PTSD and discredited

[1]

uncontested medical opinions regarding Santana's absenteeism and **REMANDS** for further proceedings.  For those same reasons, the Court **DENIES** the Commissioner's motion to affirm.

## II.  PROCEDURAL HISTORY

On July 18, 2023, Santana filed a Title II application for a period of disability and disability insurance benefits.  SSA Admin. R. 17, ECF No. 10 ("R.").  The Social Security Administration initially denied Santana's claims on March 25, 2024, and denied them again upon reconsideration on June 13, 2024.  Id.  Santana requested a hearing on July 18, 2024.  Id. A video hearing was held on January 10, 2025, during which Santana testified with representation from an attorney.  Id. The hearing officer also heard testimony from Joseph Young, a vocational expert.  Id.  The hearing officer denied Santana's claims on April 14, 2025.  Id. at 28.  On June 18, 2025, the Appeals Council denied Sanatana's request for review.  Id. at 1-3.

Santana filed his complaint in the instant action on August 11, 2025.  See Compl.  On January 16, 2026, Sanatana filed his motion for order reversing the Commissioner's decision, ECF No. 13, as well as a supporting memorandum, Mem. L. Supp. Pl's. Mot. Order Reversing Comm'r's. Decision, ECF No. 14.  On February 11, 2026, the Commissioner filed his motion to affirm the decision,

ECF No. 16, as well as a supporting memorandum, Mem. Supp. Mot. Affirm, ECF No. 17. Santana replied to the Commissioner's motion to affirm on March 10, 2026. Reply, ECF No. 20.

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## III. FACTS

Sanatana is a resident of Dracut, Massachusetts. Compl. ¶ 1. Sanatana was born in 1984, and therefore qualifies as a "younger individual" under the relevant social security regulations. R. 26; see 20 C.F.R. 404.1563.

Santana served in the United States Army from May 2011 through May 2016, from November 2017 through October 2018, and from January 2019 through January 2023. R. 415. Santana was medically discharged in June 2023 (effective January 2023) upon taking prescribed OxyCotin for back pain. R. 557. Santana thereafter received a 100% service-connected Veterans Affairs disability rating. R. 613. Santana's rating is broken down as such: 40% disabled for intervertebral disc syndrome, 70% disabled for major depressive disorder with anxiety and sleep disturbances, and 10% for tinnitus. R. 415-22.

Santana did not receive behavioral health treatment prior to the military, but he attempted suicide in 2007 at age 22 by attempting to break through the ice on a frozen lake. R. 536, 566. On June 23, 2017, Santana was diagnosed with major

[3]

depressive disorder and post-traumatic stress disorder.  R. 536. One of his providers, Dr. Elvis Espero, a psychiatrist, noted that his PTSD was "driving his anxiety symptoms."  R. 937.  Dr. Espero documented Santana's "chart history of PTSD like symptoms but" noted it was "unclear whether [the] trauma reported [met] Criterion A."  R. 1215.

On February 7, 2024, Santana underwent a consultative psychological examination with Mark Furtado, Psy.D.  R. 976. Santana endorsed symptoms of sadness, anhedonia, significant weight loss, nervousness, irritability, excessive worry, autonomic hyperactivity, low motivation, social isolation, difficulty trusting others, and recurrent nightmares since his active-duty service in 2011-2012.  R. 976-77.  Dr. Furtado observed that Santana had a mixed anxious and depressed mood, irritable affect of moderate intensity, limited appetite, and disturbed sleep.  R. 977-78.  Dr. Furtado opined that Santana's ability to sustain concentration, persistence, and pace for simple work-related tasks for two-hour periods over an eight-hour day and forty-hour work week is significantly limited, as is his ability to perform work activities on a consistent and reliable basis.  R. 979.

At the administrative hearing held on January 10, 2025, Santana testified that triggers cause mood changes during which his anger "takes the best out of" him.  R. 43.  Santana spoke at

[4]

length about the effects of his anger issues, noting that he doesn't "like to be around people" and is always "on guard." R. 55. Santana also described difficulty interacting with coworkers, reporting dreams of being mocked and "chased by [his] own people," and feelings of inadequacy regarding how he is perceived. R. 54-55. Santana described an episode where he "went off on one of [his] coworkers," resulting in his placement in an inpatient facility for 30 days. R. 59.

As for his back pain, Santana testified at the administrative hearing that he cannot walk for more than approximately a block without experiencing numbness and tingling in his back, and that sitting for an hour causes his back to be "a wreck." R. 50.

As for absenteeism, a state agency psychological consultant, Dr. Nicole Sampson, Ph.D., advised that Santana "might miss 1-2 days/month due to mood instability." R. 93, 407. Dr. Espero assessed that Santana would miss "about two days per month." R. 1260. Dr. Furtado stated that Santana's "ability to do work-related activities on a consistent, reliable basis is also significantly limited." R. 979.

Santana applied for disability insurance benefits in July 2023, alleging the following conditions: back pain via bulging discs; sleep apnea; right extremity nerve damage; limited right shoulder movement; a torn ACL and meniscus in the left knee;

[5]

acid reflux; heartburn; major depressive disorder; penitis; anxiety; and alcohol abuse.  R. 266.

## IV.  THE HEARING OFFICER'S DECISION

### A. Legal Standard

To obtain Social Security Disability Insurance benefits, an applicant – here, Santana -- must show that he is disabled.  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  The Commissioner applies a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(4); see also Goodermote v. Secretary of Health & Hum. Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). The claimant bears the burdens of production and persuasion at steps one through four of this analysis. See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001); Clarification of Rules Involving Residual Functional Capacity Assessments, 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003).

First Step.  The first step is determining whether the claimant is engaging in substantial gainful activity, defined as earnings from a work-setting exceeding an amount that the Social

[6]

Security Administration sets each year.  20 C.F.R. §§ 404.1520(a)(4)(i), 404.1574(b).

Second step.  At the second step, the hearing officer determines whether impairments are "severe."  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment or combination of impairments is severe if it significantly limits an individual's ability to engage in basic work activities.  20 C.F.R. § 404.1520(c).  The standard at the second step is not meant to be demanding. McDonald v. Secretary of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986).

Third step.  At step three, the hearing officer assesses whether the claimant's impairments meet or equal the severity of a listing.  20 C.F.R. § 404.1520(a)(4)(iii).  These so-called listings are Social Security standards of diagnoses establishing a condition is severe enough that the claimant is presumptively disabled.  20 C.F.R. § 404.1525.

Fourth Step.  However, if a claim does not meet the severity of a listing at step three, the inquiry does not end. 20 C.F.R. § 404.1520(e).  Instead, the hearing officer proceeds to step four and assesses the Residual Functional Capacity ("RFC") of the claimant.  Id.  The RFC reflects the claimant's ability to do physical and mental work-related tasks on a sustained basis. 20 C.F.R. § 404.1545(a)(1).  RFC determinations must consider all the claimant's impairments (including severe

[7]

and non-severe impairments). 20 C.F.R. § 404.1545(a)(2). The hearing officer then uses the RFC determination to decide whether the claimant can return to past relevant work. 20 C.F.R. § 404.1520(e).

Fifth Step. If the claimant's RFC would not allow the claimant to return to past relevant work, the hearing officer continues to step five of the Sequential Evaluation. 20 C.F.R. § 404.1520(a)(4)(v). At step five, the burden of proof shifts to the Social Security Administration to establish that a person of the same age, education, work experience, and RFC could do work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2); 20 C.F.R. § 404.1512(b)(3). To meet this burden, the Social Security Administration uses its Medical Vocational Guidelines (the "grid"): a comprehensive list of rules that guide a hearing officer's determination of whether a claimant is disabled based on age, work experience, education and exertional capacity. 20 C.F.R. § 404.1569a(b); 20 C.F.R. Part 404, Subpart P, App. 2. The grids have five exertional categories: sedentary, light, medium, heavy and very heavy. 20 C.F.R. Part 404, Subpart P, App. 2.

Because claimant profiles are often more complicated than the grids account for, typically the Social Security Administration has a Vocational Expert testify at the hearing regarding what types of jobs are available to people with RFCs

corresponding with the claimant's and what the requirements of those jobs are.  See 20 C.F.R. § 404.1566(e).  The Vocational Expert may rely on their experience during testimony.  Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019) ("When offering testimony, the experts may invoke . . . data otherwise developed from their own experience . . . .") (cleaned up).

The Social Security Administration also relies upon the Dictionary of Occupational Titles ("DOT"), a comprehensive list of jobs and descriptions, for the Vocational Expert to identify jobs that the claimant might be able to perform.  20 C.F.R. § 404.1566(d) (1); see Purdy v. Berryhill, 887 F.3d 7, 14-14 (1st Cir. 2018); U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991) (available at https://occupationalinfo.org).  DOT descriptions are presumed to accurately describe the work as typically performed including how strenuous the work is and the level of skill needed to perform it satisfactorily.  20 C.F.R. § 404.1566(d)(1).

The DOT has a standardized scheme for denoting how strenuous a job is or how much skill it takes to perform. Dictionary of Occupational Titles, Appendix C (IV).  The DOT denotes occupations as sedentary, light, medium, heavy and very heavy, which corresponds with the grid.  20 C.F.R. § 404.1569a(a).  The DOT also indicates how complex or skill-dependent a job is by offering a numerical Specific Vocational

[9]

Preparation ("SVP") rating between 1 and 9.  DOT, Appendix C (II).  Lower SVP numbers indicate that the job requires less skill or time to learn.  Id.

If the hearing officer finds that the claimant can do work that exists in significant numbers in the national economy given their RFC, age, education and work experience, then the hearing officer will find the claimant not disabled.  20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1566(b).

## B. Summary of Findings

At step one, the hearing officer found that Santana had not engaged in substantial gainful activity since his alleged onset date of January 31, 2023.  R. 19.  This step is not in dispute.

At step two, the hearing officer found that Santana had "severe" impairments of:  degenerative disc disease (DDD), osteoarthritis (OA), migraine headaches, depressive disorder, and anxiety disorder, which significantly limit the ability to perform basic work activities.  Id.  The hearing officer did not mention Santana's PTSD diagnosis in his step two analysis.  See id.

At step three, the hearing officer found that Santana did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.

[10]

At step four, the hearing officer found that Santana had the RFC to perform light work, expected that he could stand and/or walk for just four hours in an eight-hour workday; required the ability to change positions at 60-minute intervals; could only occasionally climb stairs and never climb ladders; could only occasionally balance, stoop, crouch, and kneel; could never crawl; must avoid concentrated exposure to vibration; and may have no interaction with the public. Id. at 21. Moreover, the hearing officer found that Santana was limited to occasional overhead reaching with his right upper extremity; was limited to work in a moderate noise level environment; was able to perform simple tasks; could occasionally interact with coworkers; can frequently interact with supervisors; was able to tolerate occasional changes in workplace duties and location; and must avoid exposure to workplace hazards such as unprotected heights and dangerous moving machinery. Id.

At step five, the hearing officer found that there were jobs that exist in significant numbers in the national economy that Santana could perform, such as marker, routing clerk, and order filer. Id. at 26-27. In making this determination, the hearing officer relied on the vocational expert's hearing testimony. The hearing officer noted the instances in which the vocational expert's reliance on his own experience and observation was inconsistent with SSA policy. Id. at 27.

[11]

## C. Santana's Appeal

On June 10, 2025, Santana filed an appeal of the Hearing Officer's decision with the Council.[1]  R. 195.  The reason given for Santana's appeal was that "[t]he decision contains errors of fact and law and is not supported by the substantial evidence."

---

[1] Claimants dissatisfied with hearing officer's decision may request that the Council review the action.  20 C.F.R. § 416.1467.  The Council may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to a hearing officer.  Id.  The Council will review a decision if:

> (1) [t]here appears to be an abuse of discretion by the administrative law judge; (2) [t]here is an error of law; (3) [t]he action, findings or conclusions of the administrative law judge are not supported by substantial evidence; (4) [t]here is a broad policy or procedural issue that may affect the general public interest; or (5) [s]ubject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and if there is a reasonable probability that the additional evidence would change the outcome of the decision.

20 C.F.R. §§ 416.1470(a).

When reviewing decisions, the Council will only consider additional evidence under subsection 20 C.F.R. § 416.1470(a)(5) if the claimant shows good cause including, for example, because "[the claimant] had a physical, mental, educational, or linguistic limitation(s) that prevented [them] from informing [the SSA] about or submitting the evidence earlier."  20 C.F.R. §§ 416.1470(b)(2).

If the Council denies a claimant's request for review of a hearing officer's decision, the decision becomes the final decision of the Commissioner and is subject to review by a district court.  Cano v. Saul, No. 1:19-CV-11563-ADB, 2020 WL 1877876, at *1-2 (D. Mass. Apr. 15, 2020) (Burroughs, J.) (citing Conte v. McMahon, 472 F. Supp. 2d 39, 44 (D. Mass. 2007)).

Id.  In the appeal itself, Santana wrote that "[t]he [Hearing Officer] failed to properly weigh the evidence, failed to properly assess witness credibility, failed to properly consider Claimant's limitations, and failed to properly develop the record."  R. 404.

More specifically, Santana raised four points in his appeal before the Appeals Council.

First, he argued that "[t]he [Hearing Officer] failed to consider all conditions."  R. 405.

Second, he argued that "[t]he [Hearing Officer] failed to properly evaluate the persuasive weight of the opinion evidence under 20 C.F.R. § 404.1520c".  Id.

Third, he argued that "[t]he [Hearing Officer] improperly found Claimant could perform light level work and that jobs were available despite an RFC limiting walking/standing to 4 hours total."  Id.

Fourth, he argued that "[t]he [Hearing Officer] failed to properly evaluate the claimant's subjective complaints (SSR 16-3p: Evaluation of Symptoms in Disability Claims)."  Id.

On June 18, 2025, the Council sent to Santana a "Notice of Appeals Council Action" regarding his appeal and submission of reasons he disagreed with the hearing officer's decision.  R. 1. The notice stated that the Council "considered the reasons and exhibited them on the enclosed Order," and that the Council

[13]

"found that the reasons do not provide a basis for changing the [Hearing Officer's] decision." Id. This suit followed.

### V. ANALYSIS

Santana argues that the Hearing Officer erred because he ignored Santana's PTSD without explanation, dismissed the medical opinions on Santana's absenteeism, and concluded that Santana could perform light work despite his limited standing and walking ability. Mem. Mot. Reverse 1. The Commissioner, in opposition, first argues that the Council was not required to specifically consider the PTSD because its impairments were encompassed by the other considered diagnoses. Mem. Mot. Affirm 9-10. The Commissioner next argues that the Hearing Officer rightly found that the absentee opinions were "not sufficiently explained nor consistent" with Santana's reported everyday activities. Id. at 13. Finally, the Commissioner argues that the Hearing Officer rightly relied on the vocational expert's testimony in finding that light work was possible despite Santana's sit/stand limits. Id. at 17.

### A. Standard of Review

Courts review the factual findings of a hearing officer based on the substantial evidence standard. Ortiz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). "Under the substantial-evidence standard, a court looks to an

[14]

existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court need not agree with the hearing officer's weighing of the evidence in order to affirm it. See Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the hearing officer], not for . . . the courts.") (quoting Rodriguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Substantial evidence need only be enough that a person of "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Id. (quoting Rodriguez, 647 F.2d at 222).

The determination of substantiality is based upon an evaluation of the record as a whole. See Frustaglia v. Secretary of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). If the hearing officer's decision was "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts," it is not supported by substantial evidence. Sacilowski v. Saul, 959 F.3d 431, 437

(1st Cir. 2020) (quoting <u>Nguyen</u> v. <u>Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999)).

The Court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); to do so, the Court must "either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim." See <u>Shiebler</u> v. <u>O'Malley</u>, 761 F. Supp. 3d 235, 241 (D. Mass. 2024) (citation omitted). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. <u>Freeman</u> v. <u>Barnhart</u>, 274 F.3d 606, 610 (1st Cir. 2001) (citing 42 U.S.C. § 405(g)). A remand due to new evidence submitted to the Council is required under sentence four. <u>Catherine I.</u> v. <u>Saul</u>, No. CV 19-394WES, 2020 WL 2730907, at *6 (D.R.I. May 26, 2020) (citing <u>Orben</u> v. <u>Barnhart</u>, 208 F. Supp. 2d 107, 115 (D.N.H. 2002)).

## B. Discussion

The Hearing Officer's Step One findings are not disputed. The Court rules that the Hearing Officer erred in his Step Two, Step Three, and Step Four determinations, and thus need not reach whether his Step Five determination appropriately relied upon the Vocational Expert to identify the three light work positions available to Santana. Because the errors in Steps Two, Three, and Four violate sentence four, the Motion for Order

[16]

Reversing Decision of Commissioner, ECF No. 13, is **GRANTED** in part, and **REMANDED**.  The Motion is **DENIED** in part as to Step Five.  The Motion for Order Affirming Decision of Commissioner is **GRANTED** as to Step 5 and **DENIED** as to all other claims.

## 1. The Hearing Officer's Step Two Findings Improperly Ignored Santana's PTSD.

Santana argues that the hearing officer erred in failing to mention (or find severe) his PTSD.  Mem. Mot. Reverse 7-10.  The Commissioner asserts that there is no error because the hearing officer considered the range of Santana's mental impairments in his analysis of Santana's anxiety and depression.  Mem. Mot. Affirm 10.

"The aim of step two is to determine whether the claimant has at least one medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" Allison M. v. Kijakazi, 2023 WL 5650100, at *8 (D. Mass. Aug. 31, 2023) (Saylor, J.) (citing 20 C.F.R. § 416.920).  Reversal based on a step two error requires the Plaintiff to show that correcting the error could change the outcome; in other words, the step two error must not be harmless for the Plaintiff to succeed.  See Socobasin v. Astrue, 882 F. Supp. 2d 137, 142 (D. Me. 2012).

Santana, however, does not merely argue that the hearing officer failed to find the PTSD as severe; he argues that the

[17]

hearing officer failed to offer the PTSD any analysis whatsoever. Mot. Reverse 10-11. Where a hearing officer "fails to explicitly mention [a condition] in [the] determination despite ample references in the record . . . . it does not inspire confidence that the ALJ adequately considered the conditions." Colon-Cuebas v. Commissioner of Soc. Sec., No. 19-cv-2065 (BJM), 2021 WL 5285151, at *9 (D.P.R. Nov. 12, 2021) (remanding disability insurance determination because the hearing officer failed to adequately consider plaintiff's mental health conditions, despite the hearing officer otherwise acknowledging symptoms in his analysis). "The Regulations assure a claimant that the Social Security Administration will consider all the evidence presented on a claimant's physical and mental limitations when making a disability determination." Lorusso v. Saul, No. 3:19 CV 126 (RMS), 2020 WL 813595, at *9 (D. Conn. Feb. 19, 2020).

Here, the hearing officer performed no analysis whatsoever of Santana's PTSD. See R. 17-28. He omitted any analysis despite a record containing a diagnosis of PTSD and multiple physician references to PTSD and its impact on Santana's mood. The Commissioner argues that the hearing officer permissibly discounted the presence and impact of Santana's PTSD based on Dr. Espero's conclusion that the PTSD drives Santana's anxiety and other symptoms identified in the hearing officer's decision.

[18]

Mem. Mot. Affirm 10. In doing so, however, the Commissioner violates the Chenery[2] doctrine, which "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced." Thomas v. Astrue, No. 09 C 7851, 2011 WL 5052049, *7-9 (N.D. Ill. Oct. 19, 2011) (quoting Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010)). The Court is left with merely the absence of any explanation for the hearing officer's failure to mention Santana's PTSD. Accordingly, the Court **GRANTS** Santana's remand request for further consideration of Santana's PTSD, as other courts within and outside this Circuit have done in similar circumstances. See, e.g., Terry v. Astrue, 580 F.3d 471, 477 (7th Cir. 2009) (error warranting remand where the hearing officer did not mention claimant's pelvic disorder); Colon-Cuebas, 2021 WL 5285151, at *9 (bipolar disorder and schizophrenia); Lorusso, 2020 WL 813595, at *9 (headaches); Warren v. Astrue, No. 09-CV-6217, 2010 WL 2998679, at *3 (W.D.N.Y. Jul. 27, 2010) (personality disorder).

## 2. The Hearing Officer's Step Three Findings Improperly Ignored Santana's PTSD.

Because the Hearing Officer did not consider Santana's PTSD at Step Two, he cannot have considered "whether the claimant's impairment or combination of impairments is of a severity to

---

[2] See SEC v. Chenery Corp., 318 U.S. 80, 87-88 (1943).

meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)." R. 18.

### 3. The Hearing Officer Improperly Discounted Santana's Absenteeism (Step Four).

Santana argues that the hearing officer erroneously decided not to credit the uncontested medical opinion that he would miss one to two days of work per month. Mem. Mot. Reverse 10. A state agency psychological consultant, Dr. Sampson opined that Santana might "miss 1-2 days/month due to mood instability." R. 93. Dr. Espero anticipated Santana would miss "about two days per month." R. 1260. Dr. Furtado opined that Santana's "ability to do work-related activities on a consistent, reliable basis is also significantly limited." R. 979. Nonetheless, the hearing officer found these opinions unpersuasive because they were not supported by sufficient explanation. R. 25. The hearing officer also found the absenteeism opinions inconsistent with the record on account of Santana's daily activities of "preparing simple meals, shopping in stores, doing housework, caring for his children, driving, paying bills, managing financial accounts, and visiting the fitness center." R. 25.

Because of the inquisitive and non-adversarial nature of social security proceedings, hearing officers have a duty to develop the record. See Heggarty v. Sullivan, 947 F.2d 990, 997

[20]

(1st Cir. 1991).  As such, where a hearing officer suspects "the evidence does not support a source's opinion and the [hearing officer] cannot ascertain the basis for the source's opinion, the [hearing officer] has an obligation to 'make every reasonable effort' to recontact the source for clarification." Gaeta v. Barnhart, No. 06-10500-DPW, 2009 WL 2487862, at *14 (D. Mass. Aug. 13, 2009) (Woodlock, J.) (quoting Social Security Ruling 96-5P, 1996 WL 374183, at *6 (July 2, 1996)).  Where, as here, the hearing officer determines that the "doctor's records are inadequate, contain conflict or ambiguity, do not appear to be based on medically acceptable diagnostic techniques, or appear incomplete," the hearing officer "must recontact the treating doctor."  Id.  The hearing officer failed to do so here, instead setting aside the absenteeism opinions from providers he otherwise found persuasive because he found their explanations lacking.

While, as the Commissioner argues, daily activities can support a finding against absenteeism, Mem. Mot. Affirm at 13-14, they do not do so here.  "[A] claimant may have the capacity to engage in certain daily, 'home activities,' but still be unable to function in a workplace environment." Sacilowski v. Saul, 959 F.3d 431, 440 (1st Cir. 2020) (internal citation omitted).  The hearing officer found that the absenteeism medical opinions were "inconsistent with the claimant's reported

[21]

activities, which include preparing simple meals, shopping in stores, doing housework, caring for his children, driving, paying bills, managing financial accounts, and visiting the fitness center." R. 25. Yet Santana reported performing these activities in a limited fashion, which does not necessarily bear on his ability to function in a workplace environment; Santana stated that he only leaves the house "once or twice a week" and goes to the gym when he "feels up to it." R. 40-41.

Moreover, the hearing officer's description of Santana's activities misrepresents the record. Among the activities the hearing officer found to undermine the absenteeism opinions were Santana paying his bills and managing financial accounts. R. 24. Santana's function report states, however, that his family handles his accounts since he "get[s] confused," while his bills are on automatic payment since he would "forget to pay things." R. 334. This misrepresentation alone warrants remand. See Mounce v. Astrue, No. 10-CV-560-PB, 2011 WL 5282638, at *11 (D.N.H. Nov. 2, 2011) ("the [hearing officer's] reliance on erroneous information may therefore have prejudiced [claimant's] claim, the case must be remanded for further proceedings.").

Accordingly, where the hearing officer discounted uncontested medical opinions about Santana's absenteeism risk, the case must be, and is, remanded for further proceedings as to the RFC. See Sacilowski v. Saul, 959 F.3d 431, 441 (1st Cir.

[22]

2020) (affirming remand where the hearing officer discredited an absenteeism determination of missing work at least once a month).

### 4. The Court Need Not Reach Step Five

At this point, "because the court has concluded that the ALJ erred at Step 4, the court need not venture into Step 5." Kent v. Berryhill, No. 1:15-CV-12167-IT, 2017 WL 1014996, at *8 (D. Mass. Mar. 15, 2017).  On remand, the hearing officer will likely need to make a new Step Five determination.  See Christopher R. v. Bisignano, No. 1:25-CV-0001-EFS, 2025 WL 2256910, at *7 (E.D. Wash. Aug. 7, 2025);  Benjamin v. Commissioner of Soc. Sec., No. CIV.A.08-4035SDW-MCA, 2009 WL 1323576, at *4 (D.N.J. May 12, 2009).

### VI. CONCLUSION

The Court **GRANTS** in part Santana's Motion, ECF No. 13, as to Steps 2, 3, and 4, and denies as moot the argument relating to step five.

The Court **DENIES** in part the Commissioner's motion to affirm, ECF No. 16 on these same grounds.  The Commissioner's decision is **REMANDED** for reconsideration in accordance with this Memorandum of Decision.

**SO ORDERED.**

[23]

WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[3]

---

[3] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 48 years.

[24]